112 So.2d 194

M. A. EVANS

v.

Gladys PATTERSON.

6 Div. 285.

Supreme Court of Alabama.

April 9, 1959.

Rehearing Denied May 28, 1959.

Guin, Guin & Cleere, Russellville, for appellant.

Tweedy & Beech, Jasper and Posey & Posey, Haleyville, for appellee.

STAKELY, Justice.

This case arises out of an automobile collision which occurred November 4, 1956, at the intersection of Highway No. 25 (sometimes called the Double Springs-Lynne Road) and Highway No. 195 (now known as Alabama No. 5). Highway now known as No. 5 runs from Haleyville to Jasper in a generally north and south direction. Highway No. 25 runs generally east and west at said intersection. Highway No. 25 was an older paved highway, not under construction at the time of the collision. Highway No. 195 was a new highway and M. A. Evans (appellant) was the highway contractor who had a written contract with the State of Alabama Highway Department to pave Highway No. 195 over a nine mile stretch which included said intersection.

Gladys Patterson (appellee) brought this suit against M. A. Evans (appellant), for personal injuries suffered by her while riding as a passenger in one of the automobiles involved in the collision. The other automobile was driven by a man named Flanagan, who had no connection with appellant. Neither did the driver of the automobile occupied by Gladys Patterson have any connection with the appellant.

Tendencies of the evidence showed that the intersection where the accident occurred was a dangerous and unsafe place and a place attended with risk. The evidence tends to show that the two automobiles came upon each other while making from 35 to 45 miles per hour. Neither

traveller saw the other until they were right on each other and so close that they did not have time to put on their brakes or make any skid marks prior to colliding. Tendencies of the evidence showed that there were no signs on the highway warning of the intersection. These were two well travelled highways, which crossed each other. They met on a rise at a point where the vision of the driver was obscured by a wooded area and neither could see the other until within 50 or 60 feet of the other. A picture introduced in evidence indicates that one could not see any road coming into the main highway from the left, which would be Double Springs. One cannot even tell that there is a road there. There were no stop signs or warning signs on the approach to the intersection. Tendencies of the evidence showed that coming from the Double Springs side there was an upgrade to this intersection and the traveller was right on it before he could realize that they were coming to another road. Tendencies of the evidence showed that there were no warning signs at the time of the accident on either the Double Springs Road or the Haleyville Road.

Tendencies of the evidence showed that the injuries sustained by the plaintiff were severe and serious. In addition to injury to her brain, her chest was crushed. She had five ribs fractured on the right side and she suffered much pain. The ribs were jagged and caused her to have pleurisy. Her skull was fractured and her nervous system seriously affected.

Over the objection of the defendant the plaintiff introduced in evidence plaintiff's Exhibit I, which was the contract between the defendant and the State Highway Department. This contract referred to and adopted the plans and specifications of the nine mile paving project which was the subject of the contract. The following provisions are contained in the contract.

"The contractor shall take all necessary precautions for the protection * * * safety of the public.

"When such opening to traffic is required or permitted by the engineer, the contractor shall make such provisions for the safety of the public as herein specified.

"Whenever traffic is maintained through or over any part of the project the contractor shall clearly mark all traffic hazards.

"Also without extra compensation, the contractor shall provide suitable * * * or other danger signs.

"And shall take all necessary precautions for—for the—safety of the public.

"And such opening (referring to opening for traffic) shall not relieve the contractor of his liability and responsibility during the period the work is so open prior to final acceptance.

"Also, that the opening of the road was not a waiver of any of the plans and specifications in the contract; also the contractor shall indemnify and save harmless the state, department, its officers and employees from all suits, actions, or claims of any character brought because of any injury or damages received or sustained by any person."

Counsel for the plaintiff stated that he was including for introduction in evidence the "Fly Leaf" of July 1, 1950, which contained Section 107.10 subsection a, subsection b and subsection c. That he was also introducing Section 107.14 and Section 107.16 and he offered each one of these sections separately. The defendant objected to each of the several sections on the grounds that "it is immaterial, incompetent and irrelevant and not binding between these parties; that it is a part of a contract not enforceable by this plaintiff; that it is things done between other parties; that it has no relevancy upon any one in this case; that it has nothing to do with any alleged negligence or duty or proximate cause and that insofar as the provisions of the book are concerned they

would be part of the contract, not part of the law of negligence, but simply a matter of agreement between the state and the contractor and not enforceable by this plaintiff." The court overruled the objections. This ruling of the court will be referred to in our later discussion of assignment of error No. 68.

The undisputed evidence of the defendant, as shown by Mr. Davis, a resident engineer of the State Highway Department, was that there was no formal acceptance of performance of the contract until November 14, 1956, when a letter to that effect was written to the contractor. The letter was introduced in evidence. The witness Davis testified in substance that he made periodic checks on the job and that the contractor Evans had not reported completion of the job but merely requested an inspection to see what remained for him to accomplish. At that time, according to the testimony of the witness Davis, the contractor was pretty far along with the job except for the filling of washouts and the reseeding of places that it was necessary for him to patch. According to his testimony, the paving had been completed and there was no grading to be done but filling in of washes on the shoulders and reseeding was necessary to be done.

Tendencies of the evidence further showed that the public was freely using the highway at the time of the collision and that the highway had been opened by direction of the State Highway Department.

I. The appellant takes the position that this action is a tort action and that that being true, the defendant owes no other duty than the common law duty to use due care to keep the highway safe for travel until the highway is turned over to the state on completion of the contract. In other words, it is seriously argued that the contract cannot be looked to to determine the duty which the contractor owes to this plaintiff. It is obvious that she was not a party to the contract but only one of the travelling public which was using the highway at the time of the accident. Upon a careful consideration, it seems to us that while the defendant did owe to the plaintiff only a common law duty, the contract can be considered in determining what would be due care under the circumstances. In Morgan Hill Paving Co. v. Fonville, 222 Ala. 120, 130 So. 807, 814, this court said:

"* * * It was the duty of the highway department to take precautions to protect the traveling public against dangers arising from barricades on a long-established highway when it authorized such highway to be obstructed by barricades, and this duty was sufficient to sustain the right of a citizen injured in the use of the highway to rely on a contract made for his protection. * * *."

In other words, this court held that the defendant could rely on a contract as a predicate for showing a duty to the plaintiff. The state in the case at bar through the contract undertook to get this contractor to protect the travelling public from any hazard or dangerous or unsafe place. It required the contractor to put up signs, warning the travelling public of any danger and it made the contractor liable in the event he failed to do so and this liability continued until performance of the contract had been finally accepted by the state. Morgan Hill Paving Co. v. Thomas, 223 Ala. 88, 134 So. 480; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Blashfield's Cyclopedia of Law & Practice, Vol. 5A, § 3259, pp. 295–296.

It should be mentioned at this point that a highway contractor in building a road under a contract with the state does not enjoy the same privilege as the state does of immunity from suits for personal injuries sustained by travellers on the highway undergoing construction, maintenance or repairs. Morgan Hill Paving Co. v. Fonville, supra.

The jury had the right to infer from the evidence that the intersection of the two highways in this case was a dangerous intersection and constituted a hazard to the travelling public if not marked and no warning given of it. Callaway v. Adams, 252 Ala. 136, 40 So.2d 73. It is well to remember what was said in Wasser v. Northampton County, 249 Pa. 25, 94 A. 444, L.R.A.1915F, 973, cited in Morgan Hill Paving Co. v. Fonville, supra [218 Ala. 566, 119 So. 620], as follows: "It is true, of course, that the ordinary needs of travel change with changed circumstances and road officers must keep in mind the new uses of travel in the construction and maintenance of highways." Travellers on highways now rely upon warning signals to slow down, warning signals of an intersection, curve and any other dangerous places, and we think that in the present case due care, among other things, required the contractor to place such warning notices of this dangerous intersection and for the failure of which he would be liable.

The appellant argues that the Alabama cases which we have cited above have in effect been overruled by the more recent case of Williams v. Wise, 255 Ala. 322, 51 So.2d 1.

In that case there was a suit against a subcontractor and the question of the contract between the original contractor and the subcontractor, was one of the things involved. It seems to us that this case does hold that a contractor is liable to a member of the public, where the law imposes on the contractor the duty to keep the subject of the work in a safe condition, and this duty continues throughout his employment. It is true, as pointed out in the foregoing case, that the liability of a contractor is in tort and not in contract and is the common law duty which the contractor owes in a situation of this kind. But we do not consider that this case is authority for the position that the contract cannot be considered in determining what is due care under the circumstances.

In the case of Wunderlich v. Franklin, 5 Cir., 100 F.2d 164, the court held that there was no liability because there was no proof of wilful or wanton misconduct, but conceded that the provisions in the contract made by the contractor for the construction of a road from the Town of Opp to the Town of Andalusia, requiring lights at barricades, conferred no greater right upon the public or imposed no greater duty upon the contractor to the public than at common law. It was conceded that the contractors were chargeable with simple negligence in not providing lights for the barrier, as required by the contract. In support of this view, the court cited the Alabama case of Carter v. Franklin, 234 Ala. 116, 173 So. 861, 863, and in that case the court called attention to the fact that the suit was in tort, cited with approval, among other authorities, the case of Morgan-Hill Paving Co. v. Fonville, 224 Ala. 383, 140 So. 575, and said: "Dealing with this case, the maintenance of such a barrier without warning lights or other adequate signals would support a finding of at least simple negligence and a consequent right of recovery by one not himself guilty of contributory negligence." In the case at bar the failure to provide warning signs at a dangerous intersection would support a finding of simple negligence, just as the maintenance of a barrier without warning lights or other adequate signals would support a finding of at least simple negligence.

■ We conclude that the various rulings of the court with reference to the contract between the state and the contractor were correct and the plaintiff was entitled to have the benefit of a duty of due care as indicated by the contract, which, as we have pointed out, includes the placing of warning signals at the intersection here involved.

■ II. It is further argued by the appellant that while performance of the contract was not formerly accepted by the State until the 14th of November, which was after the time of the accident, never-

theless the contract had been substantially completed and performance of the contract had been factually accepted by the state. It is true that the highway had been opened to the public and the public was freely using the highway, but this does not mean that the responsibility for dangerous places in the highway had been shifted from the contractor to the state. The evidence shows that performance of the contract had not been accepted by the state and that there was work still to be done, looking to the completion of the contract, before the state would accept the work done under the contract. Under these circumstances, we do not consider that the court was in error in ruling that responsibility for the condition of the highway had not been shifted from the contractor to the state.

■ III. Various exceptions were taken to the oral charge of the court. One of the exceptions refers to the following language of the court:

"These items are in evidence to determine whether there was any duty on the part of the defendant toward the plaintiff."

It is insisted by the appellant that these words indicate that the trial court was charging the jury that the duty owed by the contractor to the plaintiff was created by contract. We do not agree. When the foregoing is read in context and the whole charge is considered (Florence Coca Cola Bottling Co. v. Sullivan, 259 Ala. 56, 65 So. 2d 169), it clearly appears that the court charged the jury that the basis of the claim of the plaintiff against the defendant was negligence in that the defendant breached some duty that he owed the plaintiff and as a proximate result of that negligence, the plaintiff was injured. Of course the plaintiff has no right to sue on the contract. That is an agreement between the State of Alabama and the contractor. The various items in the contract to which the court is referring may be looked to to determine whether there was any duty on the part of the defendant to the plaintiff and as we have undertaken to show, there was

a duty, until performance of the contract was accepted, on the contractor to put warning signs at the dangerous intersection involved in this case.

■ IV. There are numerous assignments of error in this case. This is largely due to the fact that the same question is raised in many different ways. What we have said covers most of the assignments of error. There are some assignments of error, however, which appear to relate to other questions than what we have discussed. For example, Assignment No. 96 is based on the refusal of the court to give the defendant's requested Charge 14, which is as follows:

"14. The court charges the jury that if the intersection in this case was such as to be readily visible to ordinary observation by a reasonably careful man, then the defendant in this case was under no duty to erect warning signs to mark the location of said intersection for the benefit of traveling motorist."

It is sufficient to say that this charge was substantially and fairly covered by the oral charge. § 273, Title 7, Code of 1940; City of Birmingham v. Bowen, 254 Ala. 41, 47 So.2d 174.

■ V. Assignment of error No. 13 is based on the ruling of the court sustaining the plaintiff's demurrer to Plea 13, which is as follows:

"That for this defendant to have erected warning signs on the Double Springs-Parrish-Lynn Highway would have constituted a violation of the law on his part, so that to do so was not his responsibility."

It is argued that under § 47, Title 36, Code of 1940, only the highway department is authorized to classify, designate and mark the highways of the State and to provide a uniform system of same. There is no doubt that this is true, where the contract to construct the highway has been

completed and performance accepted by the state. But in this case, as we have undertaken to show, performance of the contract had not been accepted and the contract between the state and the contractor expressly required the contractor to put up warning signs of any hazard or defects in the highway. As we have shown, this certainly covered the intersection of the highway involved in this case.

VI. Assignment of error No. 136 is based on the failure of the court to require a remittitur on the motion for new trial. It is insisted that $25,000 was grossly excessive in this case and indicated bias or prejudice on the part of the jury. We do not agree. The testimony in the case shows that the plaintiff was seriously and severely injured and suffered great pain. We do not regard the verdict as excessive and the verdict of the jury was strengthened by the action of the court in overruling the motion for new trial without requiring a remittitur as a condition for such action. Louisville & Nashville Railroad Co. v. Tucker, 262 Ala. 570, 80 So.2d 288.

VII. Assignment of error No. 68 relates to the overruling of a motion by the defendant to exclude from the jury Section 107.14 of the book designated as Plaintiff's Exhibit No. 2. This section reads as follows:

"107.14. *Responsibility for Damage Claims.* (a) The Contractor shall indemnify and save harmless the State, Department, its officers, and employees from all suits, actions or claims of any character brought because of any injuries or damages received or sustained by any person, persons, or property on account of the operations of the said Contractor; or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; or because of any act or omission, neglect or misconduct of said Contractor, or because of any claims or amounts recovered from any

infringements of patent, trademark or copyright; or from any claims or amounts arising or recovered under the 'Workmen's Compensation Act' or any other law, ordinance, order, or decree; and so much of the money due the said Contractor under and by virtue of this contract as shall be considered necessary by the Department for such purpose, may be retained for the use of the State; or, in case no money is due, his Surety shall be held until such suit or suits, action or actions, claim or claims for injuries or damages as aforesaid shall have been settled and suitable evidence to that effect furnished to the Department. The State shall not be liable to the Contractor for damages or delays resulting from work by third parties or by injunctions or other restraining orders obtained by third parties."

When Section 107.14 was introduced in evidence it was objected to on grounds which have been heretofore set out and which in no manner refer to prejudice arising from the reference to the surety. Circuit Court Rule 33, Code 1940 Tit. 7 Appendix.

Later on in the trial of the case after the evidence had been closed, the defendant made a motion to exclude from the jury § 107.14 of the book designated as Plaintiff's Exhibit No. 2. This is the section of the book which is hereinabove set out. The grounds of the motion to exclude § 107.14 are that the section is prejudicial, incompetent, irrelevant or immaterial.

There is language in this section which mentions the surety of the contractor, but it will be observed that the motion to exclude § 107.14 was made after this section had been received in evidence and is to exclude the entire section, and not the particular language which mentions the surety of the contractor. Conceding for the sake of argument that the reference to the surety was inadmissible, the court will not be put in error for overruling the

objections to the section as a whole. Starr Jobbing House v. May Hosiery Mills, 207 Ala. 620, 93 So. 572. See Reese v. Mackentepe, 224 Ala. 372, 140 So. 550.

VIII. Assignment of error No. 69. This assignment relates to the overruling of a motion by the defendant to exclude from the jury the surety bond, which is a portion of Plaintiff's Exhibit I. When Exhibit I was offered in evidence by the plaintiff, the defendant objected on the grounds that, "It is immaterial, irrelevant, incompetent, and there is no light to be shed on any negligence or other issue in the case; that the traveling public cannot enforce a highway contractor's construction or maintenance contract, that a duty in a negligence action cannot be made out by contract." There was no objection that Exhibit I contained a surety bond nor was there any motion for a mistrial on the ground that the surety bond was in the contract. The grounds of the motion to exclude the surety bond which was made later in the trial after the contract including the surety bond had been introduced in evidence, were that the contract is not enforceable by the plaintiff in this case, that the surety has not been joined as a party and on the further ground that it is incompetent, irrelevant and immaterial. We do not think the grounds assigned were well taken. No error is shown by the ruling of the court in refusing to exclude the surety bond from the evidence. Circuit Court Rule 33; Starr Jobbing House v. May Hosiery Mills, supra; Security Bank & Trust Co. of Memphis, Tenn. v. Laney, 214 Ala. 561, 108 So. 367.

IX. Assignment of error No. 70. This assignment relates to the argument of counsel for appellee as follows: "I'll say he was getting a lot of money, $248,-000.00."

It is sufficient to say that if the argument was beyond the bounds of legal propriety, the record does not sufficiently disclose what was said in its context for us to say that the argument was improper.

X. Assignment of error No. 39. This assignment is based on the action of the court in overruling the objection of appellant to a question asked the witness Bob Collins: "I will ask you whether or not, based on your investigation, and what you saw down there if you have an opinion as to how fast the two vehicles were traveling at the time of the accident?" The witness was a Highway Patrolman. He testified that his experience was limited to eight or nine months at the time of this accident and that this was the first serious accident he had ever investigated, that he estimated the speed of the automobile as between 35 and 45 miles per hour.

We can see no reason for prejudicial error in the ruling of the court. The undisputed evidence on the part of the plaintiff is that they were travelling around 40 to 45 miles per hour and the defendant also brought out this by testimony of other witnesses. So if there is any error, it is harmless error, because both the plaintiff and the defendant proved that the speed of the automobiles involved in this case ranged from 35 to 45 miles per hour. There is no contention made by the defendant that the speed was other than that.

XI. Assignment of error No. 41 relates to the overruling of objection by appellant to a question by counsel for appellee to the witness Charles Canterbury as follows: "They asked you on cross-examination about a request you made to M. A. Smith. I want you to tell the jury there now the entire conversation. What you told Mr. Smith, and then what Mr. Smith told you."

In the case of Wesson v. State of Alabama, 238 Ala. 399, 191 So. 249, 250, the witness Lathum testified that after Wesson left, he, Lathum the witness, saw Earnest Brown and gave him the keys to the automobile. This is all that the state proved. On cross-examination the defendant tried to prove what Brown told this witness at the time Brown handed the keys to the witness and the court sustained the objection.

This court held: "The State having brought out a part of the transaction, the defendant was entitled to bring before the jury the whole transaction and show what was said at that particular time and place."

XII. Assignment of error No. 135 is based on the action of the court in overruling the motion for a new trial. Some of the grounds of the motion are based on the alleged prejudice arising from the rulings of the court which are made the basis of assignments of error 68, 69 and 70. As we have pointed out the court was not in error in these rulings. There was no error in overruling the motion for a new trial.

We have carefully considered all assignments of error and find no error to reverse.

Affirmed.

LAWSON, SIMPSON, MERRILL and COLEMAN, JJ., concur.